IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RACHEL TIMBLIN and HOWARD TIMBLIN, JR., husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>TREVOR M. OLSEN, M.D.; WARREN MEDICAL GROUP, A SERVICE OF WARREN GENERAL HOSPITAL; and WARREN GENERAL HOSPITAL,<br>Defendants. | : Civil Action No.   14-310 Erie<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## COMPLAINT

AND NOW come Plaintiffs, Rachel Timblin and Howard Timblin, Jr., by and through their counsel, Carlyle J. Engel, Esquire, and SWENSEN & PERER, and submit this Complaint based upon the following:

## PARTIES

1. Plaintiffs Rachel Timblin and Howard Timblin, Jr., are adult married individuals and citizens of the state of New York, having a residence at 317 Fairmont Avenue, Apt. G2, Jamestown, NY, 15701.

2. Defendant Trevor M. Olsen, M.D., is a citizen of, and a physician licensed in the state of, Pennsylvania, with a specialty in urology, with offices at 10 Timberview Lane, Suite 1, Russell, PA, 16345. Plaintiffs are asserting a professional liability claim against this Defendant. A Certificate of Merit is attached at Exhibit 1.

3. Defendant Warren Medical Group, a service of Warren General Hospital, is a physician practice group and/or division of Warren General Hospital, and is organized under the laws of

Pennsylvania, having a principal place of business at Two Crescent Park West, Warren, PA 16365, and at all times relevant employed Defendant Olsen. Plaintiffs are asserting a professional liability claim against this Defendant. A Certificate of Merit is attached at Exhibit 2.

4. Defendant Warren General Hospital is a hospital organized under the laws of Pennsylvania, having a principal place of business at Two Crescent Park West, Warren, PA 16365, and at all times relevant owned Warren Medical Group and employed Defendant Olsen. Plaintiffs are asserting a professional liability claim against this Defendant. A Certificate of Merit is attached at Exhibit 3.

## JURISDICTION AND VENUE

5. Jurisdiction and venue are proper in this Court as the events giving rise to this lawsuit arose in the Western District of Pennsylvania (in Warren County), and because the Plaintiffs are citizens of the state of New York, the Defendants are citizens of Pennsylvania, and the amount in controversy, without interest and costs, exceeds $75,000, as specified by 28 U.S.C. section 1332.

## FACTS

6. On and prior to 1/4/12, Plaintiff Rachel Timblin had a medical history which included refractory urge urinary incontinence and diabetes.

7. On 1/4/12, Rachel Timblin underwent surgery with Dr. Olsen, at Warren General Hospital, for implantation of an Interstim device with a lead in her right upper gluteal region, for purposes of improving her urinary control.

8. Following the 1/4/12 surgery, Timblin became infected at the site of the device implantation, resulting in a second surgery with Dr. Olsen on 5/16/12.

9. In the 5/16/12 surgery, Dr. Olsen explanted the Interstim device from the right upper gluteal area, implanted a new Interstim device in the left upper gluteal, and re-tunneled the lead to the left upper gluteal region after washing the lead off with Betadine and alcohol.

10. Following the 5/16/12 surgery, Timblin continued to be infected in the right upper gluteal area

at the site of the previously implanted device, resulting in a third surgery with Dr. Olsen of 7/9/12.

11. In the 7/9/12 surgery, Dr. Olsen performed an incision and drainage of the right gluteal fistulous tract. During the procedure, Dr. Olsen noted the presence of the lead wire in proximity to the infected site, but he did not remove the lead (nor did he remove the implanted device on the left side), but rather he attempted to re-tunnel the lead farther to the left.

12. Following the 7/9/12 surgery, Timblin continued to be infected (including in the left upper gluteal at the site of the newly implanted Interstim device) resulting in a fourth surgery with Dr. Olsen on 12/18/12 at Warren General Hospital.

13. During the 12/18/12 surgery, Dr. Olsen explanted the Interstim device from the left upper gluteal. However, when Dr. Olsen attempted to remove the lead wire, the lead broke. Dr. Olsen ultimately left the broken lead in Timblin and did not explant it during the 12/18/12 surgery nor at any time thereafter.

14. Following the 12/18/12 surgery, Timblin continued to be infected, resulting in the need for home care for wound packing and dressing changes.

15. On 1/13/13, Dr. Olsen aspirated fluid in the wound and cultures obtained were positive for MRSA. Dr. Olsen recommended that Timblin not have another Interstim implant due to the recurrent infections.

16. It was not until after the 12/18/12 surgery and the continued infection in January 2013, that Timblin began to question the care she had received from Dr. Olsen and thereafter lost confidence in him.

17. On 3/11/13, Timblin was evaluated by Dr. Howard Nadworny, an infectious disease specialist, who noted that Timblin might have a deep osteomyelitis or deep localized infection related to the retained wire. Dr. Nadworny recommended that the wire be removed, that a CT scan be done, that no new implant be placed, and that Timblin see a neurosurgeon if she had new signs of infection.

18. On 3/18/13, Dr. Jeremy Riedesel (Timblin's PCP) noted that Timblin had recurrent infections and that infectious disease thought the retained wire was seeding her chronic MRSA infections; that her blood sugars had been very labile over six months; and that Timblin would not have good diabetes control until the wire was removed and the infection stabilized.

19. On 5/29/13, Dr. Riedesel opined that Timblin's diabetes was difficult to manage due to the infected bladder stimulator wire. Tests were ordered to rule out osteomyelitis.

20. On 5/31/13, Timblin was admitted into WCA Hospital in Jamestown, NY, for septic shock and acute kidney injury. Her diabetes was poorly controlled. Her condition gradually improved and on 6/7/13 she was discharged to the Lutheran Home for short term rehab until 6/30/13.

21. On 8/26/13, Timblin was again admitted into WCA Hospital for severe sepsis with shock, hyperglycemia, dehydration, anemia and MRSA wound infection. She was treated in the ICU. On 8/29/13, she was stable for discharge home with home care nursing services.

22. On 11/22/13, Timblin had exploratory surgery with Dr. Bryan E. Dalton at St. Vincent Health Center, in Erie, PA, during which surgery Dr. Dalton successfully removed the retained lead wire deep in her tissue which was surrounded inside of a carrot-like structure of a fibrous tube of inflammation that had remained in proximity to the continuing infection.

23. Following the 11/22/13 surgery, Timblin's condition improved significantly, resulting in her being removed from antibiotic therapy, her wounds healing, and her diabetic condition and her overall health improving.

## COUNT I

## RACHEL TIMBLIN v. TREVOR M. OLSEN, M.D.

### Negligence

24. Plaintiff hereby incorporates by reference all preceding paragraphs as though more fully set forth herein.

25. Defendant Dr. Olsen was negligent in some or all of the following particulars:

   a. In failing to remove the lead wire in the 7/9/12 surgery when the lead wire was exposed to infection.

   b. In failing to remove the entire Interstim device (including the lead wire) during the 7/9/12 surgery given that the patient was still infected.

   c. In failing to remove the lead wire during, prior to, or sooner after the 7/9/12 surgery given the patient's continuing infection.

   d. In failing to remove the entire Interstim device (including the lead wire) during, prior to, or sooner after the 7/9/12 surgery given that the patient remained infected.

   e. In failing to refer the patient for appropriate infectious disease consultation.

   f. In allowing the patient to remain infected while failing to appropriately remove the Interstim device including the lead wire.

   g. In failing to remove the broken lead wire during the 12/18/12 surgery.

   h. In allowing the broken lead wire to be retained during and after the 12/18/12 surgery.

   i. In failing to attempt to remove the broken lead during or after the 12/18/12 surgery.

   j. In failing to appropriately refer the patient for removal of the retained lead sooner.

26. As a result of the Defendant's negligence, Plaintiff suffered injuries to her person, including but not limited to the following :

a. Continuous infection and infectious disease complications following the July 2012 surgery until the lead was ultimately removed in November 2013;

b. Continuous difficulty regulating her diabetes resulting in great fluctuations with hypoglycemia and hyperglycemic emergencies;

c. Prolonged recurrent right and left wound infections with MRSA and Pseudomonas resulting in the need for long periods of antibiotic administration and the risks associated with their use;

d. The development of sepsis and septic shock state;

e. Repeated admissions to the ICU for life threatening sepsis and diabetic conditions;

f. The development of septic shock and acute kidney injury as a result of the ongoing infections from the retained wire;

g. The development of chronic MRSA infections seeded by the retained wire, a foreign body;

h. The development of anemia due to the chronic nature of the illness;

i. The need for repeat surgeries;

j. The formation of large scars as the resected infected wounds were allowed to heal by secondary intention;

k. The need for repeat hospitalizations and prolonged periods of debility and convalescence;

l. Disturbances to her immunological system due to the prolonged inflammatory state associated with the recurrent infections and the retained wire, a foreign body;

m. The need for placement in a nursing rehabilitation facility;

n. The need for home care nursing services for wound care

27. As a result of her injuries, Plaintiff claims damages in the form of pain and suffering, embarrassment and humiliation, disfigurement, loss of the pleasures of life, medical expenses for the care and treatment of her injuries, and all other damages permitted by law.

WHEREFORE, Plaintiff claims damages and judgment in her favor and against the Defendant in an amount in excess of $75,000.00, exclusive of interest and costs. **JURY TRIAL DEMANDED.**

## COUNT II

## RACHEL TIMBLIN v. WARREN MEDICAL GROUP,

## a service of Warren General Hospital, and WARREN GENERAL HOSPITAL

### Vicarious Liability

28. Plaintiff hereby incorporates by reference all preceding paragraphs as though more fully set forth herein.

29. Defendant Warren Medical Group, a service of Warren General Hospital, and Warren General Hospital, are vicariously liable for Dr. Olsen's negligence, and for Plaintiff's injuries and damages as are set forth above.

WHEREFORE, Plaintiff claims damages and judgment in her favor and against the Defendants in an amount in excess of $75,000.00, exclusive of interest and costs. **JURY TRIAL DEMANDED.**

# COUNT III

## HOWARD TIMBLIN, JR. v. TREVOR M. OLSEN, M.D., WARREN MEDICAL GROUP, a service of Warren General Hospital, and WARREN GENERAL HOSPITAL

### Loss of Consortium

30. Plaintiff hereby incorporates by reference all preceding paragraphs as though more fully set forth herein.

31. As a result of the negligence of the Defendants as set forth above, Plaintiff's husband has lost the care, comfort, support, and society of his wife, for which he asserts a claim for loss of consortium.

WHEREFORE, Plaintiff claims damages and judgment in his favor and against the Defendants in an amount in excess of $75,000.00, exclusive of interest and costs. **JURY TRIAL DEMANDED.**

Date: December 15, 2014

SWENSEN & PERER,

*/s/ C.J. Engel*,
C.J. Engel, Esquire
Counsel for Plaintiffs
PA ID No. 92903
One Oxford Centre, Suite 2501
Pittsburgh, PA 15219
412-281-1970
cjengel@spkpowerlaw.com